UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | Case No. 4:07CR00355 CEJ (AGF) |
| LUIS ENRIQUE SANTIAGO, JR., | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This matter is before the Court on the pretrial motions filed by the defendant, Luis Enrique Santiago, Jr. Pretrial matters were referred to the undersigned United States Magistrate Judge under 28 U.S.C. § 636(b). Defendant filed a motion to suppress evidence (Doc. No. 51). An evidentiary hearing was held on July 9, 2007. The government was represented by Assistant United States Attorney David M. Rosen. The defendant was present and represented by his attorney, Douglas P. Roller. At the hearing, the government presented the testimony of Officer Daniel Milberg, who has been employed as a police officer for 11 years. Officer Millberg has been employed with the Des Peres Police Department for the past 10 years, and at the time of these events was stationed at the West County Center in Des Peres (the "Center"). Based on the testimony and evidence adduced and having had an opportunity to observe the demeanor and evaluate the credibility of the witness, the undersigned makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

At 5:45 p.m. on May 11, 2007, Officer Milberg responded to a report of a possible fraudulent use of a credit card at the Nordstrom's store at the Center. While en route to the store, Office Milberg was advised by Kayla Sparkman, Nordstrom's Loss Prevention Officer, that she was following the three suspects, and Officer Milberg met Ms. Sparkman outside a jewelry kiosk on the first floor of the Center. When Officer Milberg arrived, Ms. Sparkman advised him that two suspects, later identified as co-defendants Raul Jose Alvarado-Diaz and Luis Enrique Santiago, Sr., had attempted to use fraudulent credit cards. She advised him that two of Mr. Alvarado-Diaz's credit cards were rejected when he attempted to make a purchase in the "Rail Department" at Nordstrom's, because the related account was invalid. Furthermore, the same clerk who attempted to process the fraudulent credit cards remembered Mr. Alvarado-Diaz previously using credit cards with a different name. Ms. Sparkman further advised him that Santiago, Sr. had also attempted to use a credit card which was denied.

Officer Milberg waited for his partner, Officer Koppel, to arrive before approaching the suspects. Both officers were in uniform, and the officers did not draw their firearms at any point during the encounter. At the time they approached, Mr. Santiago Sr. was sitting in a chair in a jewelry kiosk getting an ear piercing, and Mr. Alvarado-Diaz was standing nearby. Officer Milberg noticed that another Hispanic man, later identified as Defendant Santiago, Jr., was standing approximately ten to fifteen feet away, leaning against a store adjacent to the jewelry kiosk.

Officer Milberg first approached Mr. Alvarado-Diaz to speak with him, while his partner remained near Santiago, Sr. Officer Milberg asked Alvarado-Diaz his name, and he responded with a false name. He then pulled out and presented the officer with four fraudulent credit cards with the same false name. After further questioning, Mr. Alvarado-Diaz admitted that the name on the cards was not his, and stated that the cards belonged to a friend. Officer Milberg then arrested Mr. Alvarado-Diaz and placed him in handcuffs.

Officer Milberg then approached Defendant Santiago, Jr., while Officer Koppel remained with Mr. Alvarado-Diaz, ten to fifteen feet away.[1] At the time, Officer Milberg believed that Defendant was associated with the other two suspects, as he was standing alone and in relatively close proximity to Mr. Alvarado-Diaz and Mr. Santiago, Sr.; like the others, he also appeared to be Hispanic; he was the only person standing in the vicinity; and he appeared to be watching the other two suspects with interest. Officer Milberg asked Defendant his name, and he identified himself as Luis Santiago. He asked if Defendant knew anyone who was using fraudulent credit cards. Defendant did not verbally respond, and shrugged his shoulders. He asked Defendant if he was with the other two, and he said yes. Officer Milberg then asked Defendant if he had anything in his possession that he should not. Defendant responded that he did not and stated that Officer Milberg could search him. Officer Milberg then searched Defendant and found a

---

[1] At some point after the initial encounter with Mr. Alvarado-Diaz, a third officer arrived at the scene to assist, but this officer never approached or spoke with Defendant prior to his arrest.

credit card with the name "Raymond Hortiz."  Officer Milberg asked Defendant to whom the credit card belonged and Defendant responded that the credit card belonged to a friend.  At that point Officer Milberg arrested Defendant and placed him in handcuffs.

Though Defendant asserted several arguments in his written motion, at the hearing Defendant stated that the only grounds he was raising were that there was no probable cause for his arrest, and that any evidence seized should be suppressed as the fruit of the unlawful arrest.

## CONCLUSIONS OF LAW

The encounter with Defendant here began as a consensual encounter.  Not all personal encounters between police and citizens involve "seizures" under the Fourth Amendment.  See Terry v. Ohio, 392 U.S. 1, 19 n.16 (1968).  Consensual encounters between police and private citizens do not implicate the Fourth Amendment.  United States v. Drayton, 537 U.S. 194, 200 (2003);  Florida v. Bostick, 501 U.S. 429, 434 (1991);  Florida v. Royer, 460 U.S. 491, 497 (1983).  "A Fourth Amendment 'seizure' does not occur merely because a police officer requests permission to search an area or poses other questions to a citizen."  United States v. Jones, 269 F.3d 919, 925 (8th Cir. 2001); United States v. Woods, 213 F.3d 1021, 1023 (8th Cir. 2000), citing United States v. Guerrero-Hernandez, 95 F.3d 983, 986 (10th Cir. 1996) (consensual encounter does not become custodial simply because individual being questioned is the target of an investigation).  See also, United States v. Davis, 202 F.3d 1060, 1063 (8th Cir. 2000) (whether officer had reasonable suspicion for investigative stop "became academic" when defendant agreed to answer questions).  Such encounters do not require any degree of

4

suspicion. See Drayton, 537 U.S. at 201 ("Even when law enforcement officers have no basis for suspecting a particular individual, they may pose questions, ask for identification, and request consent to search luggage – provided they do not induce cooperation by coercive means."); Bostick, 501 U.S. at 435; Florida v. Rodriguez, 469 U.S. 1, 5-6 (1984).

The determination of whether an encounter is consensual turns on whether the questioning is so "intimidating, threatening, or coercive that a reasonable person would not have believed himself free to leave." United States v. McKines, 933 F.2d 1412, 1419 (8th Cir. 1991) (en banc); accord Drayton, 537 U.S. at 201. Factors include "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." United States v. White, 81 F.3d 775, 779 (8th Cir. 1996) (citations omitted). Here, the officers did nothing to force Defendant to remain and speak with Officer Milberg. The officers never drew their firearms, never physically touched Defendant, and did not say anything to him to indicate that he was not free to leave or that he was required to speak with Officer Milberg. Although three officers were present, Officer Milberg was the only one to approach Defendant or speak with him. That Mr. Alvarado-Diaz was arrested prior to the discussion does not convert the encounter into a seizure. Drayton, 537 U.S. at 206. Consequently, the encounter between Defendant and Officer Milberg was a consensual encounter and not custodial in nature.

Assuming *arguendo* the encounter was an investigatory detention – and the Court does not find it was – here there was reasonable cause for such a detention. Officers may briefly detain an individual for an investigative purpose when they have a reasonable belief that "criminal activity may be afoot." Terry, 392 U.S. at 30. The reasonable belief requires suspicion based on "'particularized, objective facts which, when taken together with rational inferences from those facts, reasonably warrant[] suspicion that a crime [is] being committed.'" United States v. Beck, 140 F.3d 1129, 1136 (8th Cir. 1998) (quoting United Sates v. Martin, 706 F.2d 263, 265 (8th Cir. 1983)). Here, Officer Milberg had reasonable cause to believe that two individuals had committed credit card fraud, and he had confirmed that belief as to one of the two suspects. He also had reasonable cause to believe that Defendant was associated with those two suspects, and that further suspicion was confirmed when Defendant shrugged when asked if he knew anyone using fraudulent credit cards, and responded that he was with the other two suspects. As such, Officer Milberg would have been justified at this point in requesting consent to search. United States v. Blaylock, 421 F.3d 758, 769 (8th Cir. 2005) (passenger's extreme nervousness, combined with presence of masking odors, contradictory statements, and driver's vague reasons for trip, provided reasonable cause to detain vehicle for canine search), cert. denied, 126 S.Ct. 1108 (2006); United States v. Yang, 345 F.3d 650, 654 (8th Cir. 2003) ("the time it takes for an officer to find out if consent will be given cannot be an unlawful detention in the absence of coercive or otherwise unusual circumstances").

But here Officer Milberg did not request consent to search. Rather, Defendant volunteered that the officer could search him. As such, regardless of whether it was a consensual encounter or a Terry stop, the search was consensual. See Drayton, 536 U.S. at 207-08 ("The fact the officers may have had reasonable suspicion does not prevent them from relying on a citizen's consent to search."); United States v. Pennington, 287 F.3d 739, 747 (8th Cir. 2002) (finding voluntary consent where officer had co-defendant throw him a Crown Royal bag sitting on a table during search, and he complied; dissent also finds voluntary compliance though describing request as "order"); United States v. Dupree, 202 F.3d 1046, 1049-50 (8th Cir. 2000).

A warrantless search may be conducted based on an individual's voluntary consent. Schenckloth v. Bustamonte, 412 U.S. 218, 219 (1973). Such consent may be express or implied, and while the consent must be voluntary, it need not necessarily be knowing and intelligent. Id., at 241; United States v. Hogard, 254 F.3d 744, 746 (8th Cir. 2001). One need not be aware of his or her right to consent in order to make the consent voluntary. United States v. Chaidez, 906 F.2d 377, 380 (8th Cir. 1990). A consent is voluntary if it is the product of free choice, the defendant's will is not overborne, and the consent is not given under coercion or duress. In determining whether the prosecution has met its burden, courts look to both the characteristics of the accused and the details of the environment in which the consent was given. Id. at 381. Voluntariness is a factual question to be determined from the totality of the circumstances present. Schneckloth, 412 U.S. at 226-227; United States v. Matlock, 415 U.S. 164 (1974). Among the factors to be considered when examining the environment surrounding the consent are: the length

7

of time a person is detained and questioned; whether the person was threatened, physically intimidated, or punished by the police; whether the defendant relied upon promises or misrepresentations made by the police; whether the defendant was in custody; whether the consent occurred in a public or secluded location; and whether the defendant objected to the search or stood silently by while the search occurred. United States v. Smith, 260F.3d 922, 924 (8th Cir. 2001); Chaidez, 906 F.2d at 381. The foregoing factors are not to be applied mechanically, and no single factor is dispositive. Schneckloth, 412 U.S. at 226-27; Chaidez, 906 F.2d at 381. Moreover, "[t]he precise question is not whether [the defendant] consented subjectively, but whether his conduct would have caused a reasonable person to believe he consented." United States v. Jones, 254 F.3d 692, 695 (8th Cir. 2001).

Here, the Court finds that the consent to search was voluntarily given. As stated above, only a single officer approached Defendant, and none of the officers displayed their firearms, threatened, or intimidated Defendant in any fashion. When he volunteered that Officer Milberg could search him, Defendant was not in custody and was standing in an open area of a public mall. Just as the encounter between Defendant and Officer Milberg was consensual, so too was Officer Milberg's search of Defendant.

After the search and the discovery that Defendant, too, possessed a credit card in the name of another, Officer Milberg was justified in placing Defendant under arrest. An arrest is lawful even if made without a warrant, if the arrest is made with probable cause. See United States v. Watson, 423 U.S. 411, 417 (1976). Probable cause exists "when at the moment of arrest police have knowledge of facts and circumstances grounded in

8

reasonably trustworthy information sufficient to warrant a belief by a prudent person that an offense has been or is being committed by the person to be arrested." United States v. Oropesa, 316 F.3d 762, 768 (8th Cir. 2003) (quoting United States v. Hartje, 251 F.3d 771, 775 (8th Cir. 2001)); accord United States v. Travis, 993 F.2d 1316, 1323 (8th Cir. 1993) (citing Beck v. Ohio, 379 U.S. 89, 91 (1964)). Officers are not required to rule out all innocent explanations, nor are they required to be able to prove a case beyond a reasonable doubt to effect a warrantless arrest. Maryland v. Pringle, 540 U.S. 366, 371 (2003) ("the probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances"); Illinois v. Gates, 462 U.S. 213, 235 (1983) ("Finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the [probable-cause] decision."). As the Eighth Circuit observed, "We assess probable cause from the viewpoint of a reasonably prudent police officer, acting in the circumstances of the particular case. We remain mindful that probable cause is a practical, factual, and nontechnical concept, dealing with probabilities." United States v. Crossland, 301 F.3d 907, 911 (8th Cir. 2002).

Based upon the totality of the circumstances and the information known to Officer Milberg at that time, he had probable cause to arrest Defendant. Defendant was with two individuals identified as using fraudulent credit cards, one of whom possessed four fraudulent credit cards with the name of another. When asked if he knew anyone using fraudulent credit cards, Defendant gave a suspicious answer. Once the officer discovered a credit card on Defendant that did not match Defendant's name and received a

suspicious answer regarding the ownership of the credit card, Officer Milberg had probable cause to arrest Defendant.

Although it is unclear whether the officers seized anything further from Defendant following his arrest, any subsequent search and seizure of items from Defendant was also authorized, incident to the arrest. A police officer may search a person incident to a valid arrest of that person. United States v. Robinson, 414 U.S. 218, 224 (1973). A custodial arrest of a suspect based upon probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, the further search incident to arrest requires no probable cause or reasonable suspicion. Id. at 235.

Accordingly,

**IT IS HEREBY RECOMMENDED** that Defendant's Motion to Suppress [Doc. No. 51] be **DENIED**.

The parties are advised that they have eleven (11) days, to and including July 30, 2007, in which to file written objections to this report and recommendation pursuant to 28 U.S.C. §636(b)(1), unless an extension of time for good cause is obtained, and that failure
to file timely objections may result in a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.2d 356 (8th Cir.1990).

*Audrey G. Fleissig*
AUDREY G. FLEISSIG
UNITED STATES MAGISTRATE JUDGE

Dated this 18th day of July, 2007.